**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANE MESSER aka DIANE M. McCUTCHEON, CHARLES MESSER, | : | |
| Plaintiffs, | : | |
| vs. | : | Civil Action No. 11-4144 |
| FIRST FINANCIAL FCU OF MARYLAND, | : | |
| Defendant. | : | |

**FIRST FINANCIAL FCU OF MARYLAND'S RESPONSE TO PLAINTIFFS' CROSS MOTION TO AMEND COUNT VI AND REVISED MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant First Financial FCU of Maryland ("FFFCU") respectfully submits this Response ("Defendant's Response") to Plaintiffs' Response to Motion to Dismiss of FFFCU and Cross Motion to Amend Count VI ("Plaintiffs' Response") by Diane Messer a/k/a Diane M. McCutcheon ("Plaintiff") and Charles Messer ("Mr. Messer" and collectively with Plaintiff, "Plaintiffs").

## I. CASE HISTORY

On or about June 24, 2011, Plaintiff filed the original Complaint claiming FFFCU wrongly repossessed her vehicle and asserted three claims against FFFCU: (1) a claim under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"); (2) a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); and (3) a conversion claim.

On August 25, 2011, FFFCU filed a Motion to Dismiss the original Complaint with prejudice. In response to FFFCU's Motion to Dismiss, on September 13, 2011, Plaintiffs filed the First Amended Complaint. In the First Amended Complaint, Plaintiffs asserted six claims

against FFFCU: (1) Plaintiff alone asserted (a) claims under FCEUA and UTPCPL, (b) a conversion claim, and (c) a claim for violation of the bankruptcy discharge; (2) Plaintiffs jointly asserted claims for intentional and negligent infliction of emotional distress; and (3) Mr. Messer alone asserted a loss of consortium claim ("LOC Claim").

On October 3, 2011, FFFCU filed a Motion to Dismiss the First Amended Complaint with prejudice ("Motion to Dismiss"). On October 13, 2011, Plaintiffs filed Plaintiffs' Response. Below is a summary of the numerous requests for relief in Plaintiffs' Response and a summary of the Defendant's responses and requests for relief set forth herein. After dismissal of Court V and assuming the Court will grant the Motion to Amend Court VI so Plaintiff is the claimant, the five claims Plaintiffs assert against FFFCU will be: (1) Plaintiff alone asserts the following claims (a) claims under FCEUA and UTPCPL, (b) a conversion claim, (c) a claim for violation of the bankruptcy discharge; and (d) the LOC Claim; and (2) Plaintiffs jointly assert a claim for intentional infliction of emotional distress ("IIED Claim").

After review and consideration of Plaintiffs' Response and the Second Amended Complaint, Plaintiffs still cannot hold FFFCU liable for damages that clearly are not attributable to FFFCU's legal repossession of the vehicle. For the reasons set forth herein and in the Motion to Dismiss, the Second Amended Complaint must be dismissed with prejudice.

## II. SUMMARY OF PLAINTIFFS' RESPONSE

Plaintiffs' Response provides that Plaintiffs voluntarily dismiss Court V of the First Amended Complaint asserting the claim of negligent infliction of emotional distress and requests the following relief from this Court:

1. leave to amend Count VI of the First Amended Complaint to name Plaintiff as the claimant for the LOC Claim instead of Mr. Messer;

2. leave to file a "<u>Second Amended Complaint</u>" within five days from the date of an order from this Court;

3. deny FFFCU's Motion to Dismiss the First Amended Complaint;

4. require FFFCU to file an Answer to the Second Amended Complaint within a number of days at the Court's discretion; and

5. if Count I of the First Amended Complaint asserting the claim of willful violation of Section 524 of the Bankruptcy Code is dismissed, to dismiss the state law claims without prejudice so the state court can hear the claims.

## III. <u>SUMMARY OF DEFENDANT'S RESPONSE</u>

FFFCU accepts Plaintiffs' voluntary dismissal of Court V of the First Amended Complaint asserting the claim of negligent infliction of emotional distress and does not oppose Plaintiffs' Motion to Amend Court VI to name Plaintiff as the claimant for the LOC Claim instead of Mr. Messer. Defendant, however, responds by requesting the following relief from this Court:

1. accept the Second Amended Complaint attached to Plaintiffs' Response as the Complaint without requiring, or permitting, Plaintiffs to file it or any other revised complaint;

2. permit FFFCU to file the short reply set forth below to address Plaintiffs' argument that Section 9-204(b) of the Uniform Commercial Code ("<u>UCC</u>") prohibits enforcement of Section 9-204(c) of the UCC;

3. allow FFFCU to adopt in full its Motion to Dismiss filed on October 3, 2011 ("<u>Motion to Dismiss</u>") and consider it amended as set forth in Section V below and re-filed against the Second Amended Complaint;

4. dismiss with prejudice all claims set forth in all five Counts of the Second Amended Complaint; and

5. schedule oral argument prior to ruling on the Motion to Dismiss.

## IV. <u>RESPONSE TO CROSS MOTION TO AMEND THE COMPLAINT</u>

FFFCU does not oppose Plaintiffs' Motion to Amend Court VI by naming Plaintiff as the claimant for the LOC Claim instead of Mr. Messer. However, to prevent any further revisions to

the Complaint, FFFCU respectfully requests this Court to accept the Second Amended Complaint attached to Plaintiffs' Response as the "Complaint" without requiring, or permitting, Plaintiffs to file it or any other complaint at a later date. After four months, this case is still in the motion to dismiss stage.

## V. REQUEST TO FILE A REPLY TO PLAINTIFFS' RESPONSE

FFFCU respectfully requests this Court to allow it to file a brief reply to Plaintiffs' Response. Assuming the Court will grant the Motion to Amend Court VI so Plaintiff is the claimant, there is only one change to the facts in the Second Amended Complaint – Plaintiffs change the claimant in the LOC Claim to be the Plaintiff and the alleged injured party to be Mr. Messer. Further, Plaintiffs raise only one legal argument in Plaintiffs' Response to the Motion to Dismiss. The amended fact and single argument can quickly be addressed in this Proposed Reply instead of requiring FFFCU to file another full Motion to Dismiss.

## VI. PROPOSED REPLY

### A. The LOC Claim Fails as a Matter of Law

The LOC Claim is "derivative, emerging from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities." *Darr Constr. Co. v. Workmen's Comp. Appeal Bd.*, 552 Pa. 400, 408 (Pa. 1998) (citations omitted); *Schlott v. NGK North America, Inc.*, 2011 WL 833624, at *8 (Sup. Pa. Feb. 17, 2011) (loss of consortium claim is a derivative claim based on the success of the underlying claim of the spouse); *Righter v. Walter*, 2009 WL 3165836 (Pa. Comm. Pl. Mar. 12, 2009) (same). Here, Plaintiff's LOC Claim is dependent on the success of Mr. Messer's IIED Claim. However, Mr. Messer's (and Plaintiff's) IIED Claim fail as a matter of law for the numerous reasons set forth in detail in the Motion to Dismiss.

In summary, Plaintiffs' IIED Claims fail for the following two reasons: (1) FFFCU's repossession of the vehicle was lawful; and (2) FFFCU's actions during the repossession certainly cannot be considered the "extreme," "atrocious," "outrageous" and "beyond all possible bounds of decency" conduct required to state a claim for intentional infliction of emotional distress. The only allegations in the Second Amended Complaint that could remotely support a claim for intentional infliction of emotional distress are that FFFCU "unlawfully fabricated" and "falsely appended" the Security Agreement to the Vehicle Loan Agreement, Line of Credit, Summer Loan and Holiday Loan. *See* Compl. at 31-32. However, even if these allegations were true, which FFFCU absolutely and completely denies, such actions cannot meet the standard of "only the most egregious conduct" required for the "most limited of torts." *Hoy v. Angelone*, 720 A.2d 745, 754-755 (Pa. 1998). As the Pennsylvania Supreme Court stated in *Hoy*, courts in Pennsylvania "have been chary to allow recovery for a claim of intentional infliction of emotional distress," and "'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id*. at 753-754. FFFCU's lawful conduct in this case does not even come close to such conduct.

Moreover, Plaintiffs do not allege any definitive facts, documents, statements or any other evidence upon which they could rely to form the basis for the allegations that FFFCU "unlawfully fabricated" and "falsely appended" the Security Agreement to the loan documents. As explained in detail in the Motion to Dismiss, to survive a motion to dismiss for failure to state a claim, the complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be enough to support a more than speculative claim, and the plaintiff's claim

must be plausible, not just conceivable. *Id*. "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In this case, although Plaintiffs are on the third version of the Complaint, Plaintiffs still assert only conclusory allegations to support their IIED Claims, which cannot survive a motion to dismiss.

Moreover, naming Plaintiff as the claimant of the LOC Claim required Plaintiffs to allege physical injury to Mr. Messer as a result of FFFCU's repossession of the vehicle. Although Plaintiffs allege physical injury of a brain bleed to Mr. Messer, Plaintiffs do not allege any definitive facts, documents, statements or any other evidence upon which they could rely to form the basis for the allegation that repossession of vehicle caused the brain bleed. The Second Amended Complaint provides the following allegations for the IIED claim: (1) FFFCU "unlawfully fabricated" and "falsely appended" the Security Agreement to the loan documents; (2) FFFCU repossessed the vehicle from the rectory where Plaintiffs live and Mr. Messer is the pastor; (3) Plaintiffs leased another vehicle; (4) Mr. Messer was broaching the Church vestry with the prospect of consolidating with another church; (5) presence of a new vehicle provoked public questioning and gossip regarding Mr. Messer's financial management; (6) Mr. Messer was sensitive to the investigation, which caused him stress and anxiety; and (7) Mr. Messer was a stroke survivor and suffered a brain bleed on August 7, 2011 which caused him to be hospitalized. *See* Compl. at 31-39.

First, FFFCU's lawful repossession of the vehicle cannot provide the basis for IIED Claim. Second, Mr. Messer's brain bleed occurred almost three months after the repossession and Mr. Messer had suffered a stroke at some point in the past. Plaintiffs did not allege that the brain bleed was NOT caused by the stroke. Third, and significantly, Plaintiffs assert that Mr.

Messer was hospitalized for the brain bleed, and clearly have documents showing he was hospitalized and likely how he was treated and what may have caused the brain bleed. Telling, however, Plaintiffs do not attach any documentary proof of the hospital visit, how the hospital diagnosed the injury, what caused the injury, what treatment he received, any medications he was given or how long he was hospitalized. Again, alleging only that Mr. Messer suffered a brain bleed based on the stress from the repossession are an example of conclusory and "bare-bone" allegations that cannot survive a motion to dismiss.

**B. Contrary to Plaintiffs' Assertion, Section 9-204(b) Is Not Applicable**

Plaintiff argues that FFFCU cannot have a security interest in Plaintiff's personal vehicle (i.e. a consumer good) based on Section 9-204(b). *See* Md. Code Ann. Commercial Law § 9-204(b) (2011). Section 9-204(b) provides "[a] security interest does not attach under a term constituting an *after-acquired property* clause to: (1) Consumer goods…unless the debtor acquires rights in them within 10 days after the secured party gives value; or (2) A commercial tort claim." *Id*. at § 9-204(b) (emphasis added). Section 9-204(b) could arguably prevent a lender like FFFCU from obtaining a security interest in a person's consumer goods (i.e. personal car) if solely relying on an after-acquired property clause. However, contrary to Plaintiffs' assertion, Section 9-204(b) does not apply in this case.

Here, pursuant to the cross-collateralization clause in Plaintiff's *Vehicle Loan Agreement*, Plaintiff gave her car as collateral for the debt owed under Vehicle Loan Agreement and the debt Plaintiff owed under her other loan agreements with FFFCU. See Exhibit A at ¶ 10 ("Property given as security for this loan or for any other loan will secure all amounts I owe the Credit Union now and in the future"). In other words, Plaintiff knew the consumer good collateral she was pledging (i.e. her car) was being given as collateral for other debts to FFFCU. Maryland

adopted Section 9-204 and its accompanying Comments of the Uniform Commercial Code. *See* Md. Code Ann. Commercial Law § 9-204 (2011). Section 9-204(c) expressly permits such situations and provides that a "security agreement may provide that collateral secures⋯, *future advances or other value*, whether or not the advances or value are given pursuant to commitment." *Id.* at § 9-204(c) (emphasis added). Comment Five to Section 9-204(c) states that "the parties are free to agree that a security interest secures *any obligation whatsoever*." *Id.* at Comment 5 (emphasis added). Indeed, as explained in the Motion to Dismiss, numerous courts have held that a cross-collateralization clause in a vehicle loan agreement is valid and may secure debt incurred pursuant to a separate credit card agreement. *See, e.g., Yelverton v. Yelverton (In re Yelverton)*, 2008 WL 4768874, at *4 (11th Cir. Nov. 3, 2008); *In re Conte*, 206 F.3d 536, 538-39 (5th Cir. 2000); *In re Shemwell*, 378 B.R. 166, 168 (Bankr. W.D. Ky. 2007); *In re Nagata*, 2006 WL 2131318, at *2 (Bankr. D. Haw. July 20, 2006).

Similarly, Section 9-204(a) provides: "[e]xcept as otherwise provided in subsection (b), a security agreement may create or provide for a security interest in *after-acquired collateral*." *Id.* at § 9-204(a) (emphasis added). Comment Two to Section 9-204(a) provides that subsection (a) "makes clear that a security interest arising by virtue of an *after-acquired property* clause is no less valid than a security interest in collateral in which the debtor has rights at the time value is given." *Id.* at Comment 2 (emphasis added). Comment Two further provides that "[s]ubsection (a), together with subsection (c), also validates "cross-collateral" clauses under which collateral acquired at any time *secures advances whenever made*." *Id.* (emphasis added).

As emphasized above, there is a clear distinction in Section 9-204 between "future advances or other value" and "after-acquired property or collateral." While Section 9-204(a) creates a general rule that a security agreement may create or provide for a security interest in

*after-acquired collateral*, Section 9-204(b) exempts consumer goods and commercial tort claims from inclusion in the *after-acquired collateral*. While Section 9-204(c) allows a security agreement to provide that collateral secures *future advances or other value*, there is no consumer exception regarding future advances. Accordingly, Section 9-204 restricts a lender's ability to gain security interests in a broader range of collateral than debtors contemplated, but does not restrict a lender's ability to secure a broader range of debt. *See, e.g.*, *Yelverton v. Yelverton (In re Yelverton)*, No. 08-12091, 2008 WL 4768874, at *4 (11th Cir. Nov. 3, 2008); *Univ. Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 463 (7th Cir. 2007). The distinction is that the consumer knowingly gives a lender a security interest in a particular consumer good pursuant to the future advance provision, which is different than the consumer giving a lender a security interest in future unknown consumer goods. Accordingly, the cross-collateralization clause in the Vehicle Loan Agreement, and other loan agreements, is enforceable, Plaintiff's other debt to FFFCU was secured by the vehicle, and FFFCU could lawfully repossess the vehicle to satisfy the debt under the other loan agreements.

## VII. CONCLUSION

For the foregoing reasons, FFFCU respectfully requests that: (1) the Court accepts the Second Amended Complaint attached to Plaintiffs' Response as the Complaint without requiring or permitting Plaintiffs to file it or any other revised complaint; (2) FFFCU be granted leave to file a reply to Plaintiffs' argument that Section 9-204(b) of the UCC prohibits enforcement of Section 9-204(c) of the UCC; (3) allow FFFCU to adopt in full its Motion to Dismiss filed on October 3, 2011, as amended herein, and consider it re-filed against the Second Amended Complaint; (4) dismiss with prejudice all Counts of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); and (5) permit oral argument prior to ruling on the Motion to Dismiss.

Respectfully,

/s/ Caitlin M. Piccarello
SAUL EWING LLP

Caitlin M. Piccarello, Esquire
Attorney I.D. No. 202769
1500 Market Street, 38th Fl.
Philadelphia, PA 19102
Ph: (215) 972-7153
cpiccarello@saul.com

Kimberly A. Manuelides, Esquire
*Admitted Pro Hac Vice*
500 East Pratt Street, Suite 900
Baltimore, MD 21202-3171
Ph: (410) 332-8844
kmanuelides@saul.com

*Attorneys for Defendant*
*First Financial FCU of Maryland*

Dated: October 31, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of First Financial FCU of Maryland's Response to Plaintiffs' Cross Motion to Amend Court VI and Revised Motion to Dismiss Second Amended Complaint was served via ECF on the following counsel of record:

Robert P. Cocco, Esquire
Law Offices of Robert P. Cocco, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
rcocco@rcn.com

Matthew B. Weisberg, Esquire
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA 19070
mweisberg@ppwlaw.com

*Counsel for Plaintiffs*

/s/ Caitlin M. Piccarello
Caitlin M. Piccarello

Dated: October 31, 2011

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANE MESSER aka DIANE M. McCUTCHEON, CHARLES MESSER, | : | |
| Plaintiffs, | : | |
| vs. | : | Civil Action No. 11-4144 |
| FIRST FINANCIAL FCU OF MARYLAND, | : | |
| Defendant. | : | |

**O R D E R**

**AND NOW**, this _______ day of __________, 2011, upon consideration of Defendant First Financial FCU of Maryland's Motion to Dismiss the Second Amended Complaint, and any response thereto, it is ORDERED that Plaintiffs' Second Amended Complaint is DISMISSED WITH PREJUDICE.

________________________________
, J.

1349267.1