IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DIANE MESSER, a/k/a DIANE M. McCUTCHEON, and CHARLES MESSER, : : : | |
| Plaintiffs, : | CIVIL ACTION |
| v. : | NO. 11-4144 |
| : | |
| FIRST FINANCIAL FEDERAL CREDIT UNION OF MARYLAND, : : | |
| Defendant. : : | |

**MEMORANDUM OPINION**

**RUFE, J.**                                                                                                       **July 30, 2012**

Plaintiffs Diane Messer and Charles Messer bring claims against Defendant First Financial Federal Credit Union of Maryland ("First Financial") for willful violation of a bankruptcy discharge injunction, violations of the Pennsylvania Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, conversion, intentional infliction of emotional distress, and loss of consortium.  Before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In 2004 and 2005, Plaintiff Diane Messer[1] entered into five separate loan agreements with Defendant First Financial, including a six-year financing agreement to purchase a Toyota Prius (the "Vehicle Loan Agreement" or "Vehicle Debt").  On April 5, 2005, Plaintiff and her former

---

[1] Because the facts and claims in the Second Amended Complaint ("SAC") are primarily applicable only to Diane Messer, she will be referred to hereinafter as "Plaintiff."

1

husband, Michael McCutcheon, filed a bankruptcy petition in the United States Bankruptcy Court for the District of Maryland.[2]  Plaintiff's Vehicle Debt was listed therein as secured debt,[3] and three other First Financial loans—in the amounts of $4,821.23, $409.34, and $883.08—were listed under "Unsecured Nonpriority Claims."[4]  In October 2005, Plaintiff and her former husband were granted a bankruptcy discharge, and the bankruptcy proceeding was closed in April 2006.[5]

Plaintiff alleges that she continued to make monthly payments on her Vehicle Debt, and made the final payment on or about May 5, 2011.  Nonetheless, on May 17, 2011, her car was towed and repossessed by First Financial.  The following day, Plaintiff called First Financial and spoke to loan repayment officer Donald Stewart, who agreed that Plaintiff had satisfied the Vehicle Debt, but told her that the car had been repossessed pursuant to a "cross-collateralization clause" in the Vehicle Loan Agreement which provided that the vehicle was to serve as collateral in the event Plaintiff defaulted on her other First Financial loans.  In response to Plaintiff's questions, First Financial sent her a copy of a "Promissory Note and [Security] Agreement," which First Financial stated was an addendum to the Vehicle Loan Agreement.  The Promissory Note contained a clause reading, in part, "Property given as security for this loan or for any other

---

[2]  Voluntary Petition, In re Michael Scott McCutcheon and Diane M. McCutcheon, No. 05-17860 (Bankr. D. Md. Apr. 5, 2005) (Bankr. Doc. No. 1).  A court may take judicial notice of documents from a bankruptcy proceeding, and consider them on a motion to dismiss.  See Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000) ("Under Federal Rule of Evidence 201 we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.").

[3]  Id. at 11 (Schedule D).

[4]  Id. at 14 (Schedule F).

[5]  Bankr. Doc. Nos. 24 & 26.

2

loan will secure all amounts I owe the Credit Union now and in the future." Plaintiff also received a letter dated May 17, 2011, stating she had until June 3, 2011, to redeem the car by paying First Financial $6,308.84.[6] After the redemption period passed, First Financial sold Plaintiff's car and its contents to satisfy her alleged remaining debt.

Plaintiff asserts, however, that she never saw the Promissory Note or its cross-collateralization clause before the repossession, that the unsigned Promissory Note was fabricated by First Financial in a fraudulent attempt to justify the repossession, that no such addendum was attached to or integrated into either the Vehicle Loan Agreement or her other debt agreements at the time they were executed,[7] and finally, that any debt remaining under her other loan agreements with First Financial was unsecured debt properly discharged in bankruptcy before her car was repossessed. Accordingly, she alleges, First Financial had no right to repossess or sell the vehicle.

Both Plaintiff and her current spouse, Charles Messer, allege that they suffered severe emotional and physical distress as a result of First Financial's repossession of Plaintiff's car. Specifically, Plaintiffs allege that the wrongful repossession, in addition to causing stress, required them to lease a new vehicle. They allege that the presence of a new car in the parking lot of the church where Charles Messer is a clergyman caused gossip and speculation among the parishioners and an investigation into Mr. Messer's management of church funds. They further allege that anxiety resulting from this gossip and investigation caused Mr. Messer, who had

---

[6] Mot. to Dismiss, Ex. H (Doc. 13-1).

[7] Specifically, Plaintiff alleges that her own signed carbon copy of the Vehicle Loan Agreement contains no perforations to support an inference that the addendum was originally attached to and integrated into the one-page contract. SAC ¶ 31.

suffered a stroke in December 2007, to experience bleeding of the brain on August 7, 2011, which required his hospitalization.

In the Second Amended Complaint,[8] Plaintiff Diane Messer asserts claims against First Financial for willful violation of the 2005 bankruptcy discharge injunction, pursuant to 11 U.S.C. § 524 (Count I); violations of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270.1, *et seq.* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201-1 to 201-7 (Count II); and conversion (Count III). Both Mr. and Mrs. Messer bring claims for intentional infliction of emotional distress (Count IV), and Diane Messer brings a claim for loss of consortium as a result of her husband's injuries (Count V).

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[9] and "enough facts to raise a reasonable

---

[8] Plaintiffs filed their original Complaint on June 24, 2011, bringing claims for violations of the Fair Debt Collection Practices Act, the FCEUA, the UTPCPL, and conversion [Doc. No. 1]. Defendant moved to dismiss the Complaint [Doc. No. 11], and Plaintiffs filed a First Amended Complaint [Doc. No. 12], bringing claims for willful violation of the bankruptcy discharge injunction, violations of the FCEUA and the UTPCPL, conversion, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium by Mr. Messer. First Financial moved to dismiss the First Amended Complaint [Doc. No. 13] and Plaintiffs filed a response in opposition [Doc. No. 15], voluntarily withdrawing their claim for negligent infliction of emotional distress and including a cross-motion to amend the loss of consortium claim and file a Second Amended Complaint. The Court granted the cross-motion [Doc. No. 18]; however, rather than requiring complete re-briefing, the Court deemed the pending Motion to Dismiss re-filed as to the Second Amended Complaint [Doc. No. 19], noting that Plaintiffs' joint claim for negligent infliction of emotional distress was dismissed with prejudice as withdrawn and the loss of consortium claim was now correctly brought by Mrs. Messer. Now before the Court is Defendant's Motion to Dismiss, re-filed as to the Second Amended Complaint [Doc. No. 13], Plaintiffs' Opposition thereto [Doc. No. 20], Defendant's Reply [Doc. No. 21], and Plaintiffs' Sur-reply [Doc. No. 24].

[9] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)); see also Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1323 (2011).

expectation that discovery will reveal evidence of the necessary element" of a claim.[10] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."[11] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[12]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[13] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[14] it "need not accept as true 'unsupported conclusions and unwarranted inferences,'"[15] or the plaintiff's "bald assertions" or "legal conclusions."[16]

---

[10] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556) (internal quotation marks omitted).

[11] Twombly, 550 U.S. at 555 (citations omitted).

[12] Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. See Twombly, 550 U.S. at 556, 558-59.

[13] Phillips, 515 F.3d at 233 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[14] Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010).

[15] Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[16] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

### III.   DISCUSSION

#### A.   Violation of Bankruptcy Discharge Injunction; Violation of the FEUCA and the UPTCPL; and Conversion

First Financial has moved to dismiss Plaintiffs' claims for conversion and violations of the bankruptcy discharge injunction, the FEUCA, and the UPTCPL, arguing that the cross-collateralization clauses in the Vehicle Loan Agreement and the other loan agreements are valid and enforceable under Maryland law, pursuant to Section 9-204(c) of the Uniform Commercial Code and Maryland case law.[17]  Therefore, Defendant argues, all of Plaintiff's First Financial debts were secured by a lien on her vehicle and were not discharged in the bankruptcy proceeding.[18]  Consequently, Plaintiffs cannot maintain a claim sounding in unfair debt collection or conversion, because First Financial's repossession of her vehicle was legal.[19]  However, these arguments depend upon the resolution of disputed issues of fact that the Court cannot reach on a motion to dismiss.  Plaintiff does not claim that an existing cross-collateralization clause or lien is unenforceable or that her debt was unsecured despite such a clause; rather, she asserts that a cross-collateralization clause was not included in the Vehicle Loan Agreement, and that the documents First Financial has proffered in support of its Motion are fabrications.  Accepting these factual allegations as true for purposes of the motion to dismiss, the existence of the cross-collateralization clauses is in dispute and the allegations are sufficient to state a cause of action for the claims in Counts I-III.

---

[17]   Mot. to Dismiss at 6-7.

[18]   Id. at 8-9.

[19]   Id. at 9-11.

### B.     Intentional Infliction of Emotional Distress

To bring a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: 1) that the defendant's conduct was extreme and outrageous, 2) that the conduct was intentional or reckless, 3) that the conduct caused emotional distress, and 4) that the resulting emotional distress was severe.[20]

To satisfy the first element, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[21]  "[C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress."[22]  It is "not [] enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."[23]  The tort is instead "reserved by the courts for only the most clearly desperate and ultra extreme

---

[20]    See Bruffet v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982) (citing Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)); Ruder v. Pequea Valley Sch. Dist., 790 F. Supp 2d 377, 397 (E.D. Pa. 2011).  The Pennsylvania Supreme Court has not expressly recognized a cause of action for the tort of intentional infliction of emotional distress, but "has acknowledged its existence and has analyzed its elements in various respects." Weiley v. Albert Einstein Med. Ctr., No. 339 EDA 2011, 2012 WL 1889634, at *10 n.12 (Pa. Super. Ct. May 24, 2012) (citing Hoy v. Angelone, 720 A.2d 745, 754 n.10 (Pa. 1998); Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 988-89 (Pa. 1987)).  Nor has the Pennsylvania Supreme Court formally adopted § 46 of the Restatement of Torts, but has cited this section "as setting forth the minimum elements necessary to sustain such a cause of action." Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing Kazatsky, 527 A.2d at 988); see also Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010) (recognizing intentional infliction of emotional distress as a tort in Pennsylvania).

[21]    Hoy, 720 A.2d at 754 (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987) (internal quotation omitted).

[22]    Id. at 753.

[23]    Id. at 754 (citing Restatement (Second) of Torts § 46, cmt. d (1965)) (internal quotation omitted).

conduct."[24]

Under Pennsylvania law, "it is for the court to determine in the first instance whether defendant's conduct can be reasonably regarded as so extreme and outrageous to permit recovery."[25] Here, Plaintiff alleges that First Financial repossessed and sold her car without legal justification, sent her a single notification letter informing her of the repossession and redemption policy, and thereafter fabricated loan documents to support the repossession.[26] If true, such actions are possibly fraudulent and certainly disgraceful; however, the Court does not find the conduct alleged comparable to that found to be sufficiently "extreme and outrageous" as defined by case law.[27]

---

[24] Id. For examples of circumstances in which courts have found extreme or outrageous conduct, see, e.g., Papieves v. Lawrence, 263 A.2d 118, 121 (Pa. 1970) (defendant, after striking and killing plaintiff's child with an automobile, failed to notify authorities or seek medical assistance and buried the body in a field, where it was discovered and returned to parents two months later); Chuy, 595 F.2d at 1274 (professional sports team physician knowingly provided the press with false information that plaintiff, a retiring player, was suffering from a fatal disease); Banyas v. Lower Bucks Hosp., 437 A.2d 1236, 1238 (Pa. Super. Ct. 1981) (defendants intentionally fabricated documents to suggest that plaintiff had killed a third party, leading to plaintiff's indictment for homicide).

[25] Corbett v. Morgenstern, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citing Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Restatement (Second) of Torts § 46, cmt. h).

[26] Defendant argues that its conduct cannot be considered extreme or outrageous because it repossessed Plaintiff's car lawfully. Mot. to Dismiss at 11-14. At the motion to dismiss stage, however, the Court is bound to accept as true Plaintiff's allegation that the loan agreements did not contain a cross-collateralization clause, and therefore cannot determine whether Defendant's conduct was "lawful." See, supra, Part III.A.

[27] Courts in this district have suggested that unjustified foreclosure of a residential property might, in egregious circumstances, support a claim for intentional infliction of emotional distress, but even in that context have yet to find circumstances that meet the outrageous conduct requirement. See, e.g., Brown v. Udren Law Offices PC, No. 11-2697, 2011 WL 4011411, at *4 (E.D. Pa. Sept. 9, 2011) ("Plaintiff alleges only that various documents related to the foreclosure action falsely indicated that Defendants had obtained a judgment against her. Plaintiff does not allege that she was not in default of her mortgage obligations. Plaintiff also does not allege that Defendants did not have the right to foreclose on the property. . . . [T]his conduct alone is not so outrageous, so extreme, or so beyond the bounds of decency to support a separate cause of action for [intentional infliction of emotional distress] under Pennsylvania law."); Numerof v. Cont'l Title Ins. Co., No. 87-6874, 1987 WL 30135, at *5 (E.D. Pa. Dec. 24, 1987) ("In [the Court's] view, even if defendant did not have a right to foreclose, providing notice of intention to foreclose, would not, absent a clear showing of knowledge that there was no right to foreclose, provide a basis for a cause of action for intentional infliction of emotional distress."); Jones v. Nissenbaum, Rudolph & Seidner, 368 A.2d 770, 772-74 (Pa. Super. Ct. 1976) (even where defendants knew that foreclosure could not occur without a hearing

Moreover, Plaintiffs' allegations are insufficient to establish the remaining elements of a claim for intentional infliction of emotional distress. The Third Circuit has concluded that, in Pennsylvania, "both intentional and negligent infliction of emotional distress require[] a manifestation of physical impairment resulting from the distress"[28] or "some type of resulting physical harm due to the defendant's outrageous conduct."[29] As to the severity of the resulting distress, "[t]he Pennsylvania Supreme Court has enunciated an objective standard, permitting recovery only 'where a reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the event.'"[30] A plaintiff must therefore "plead facts that would support an inference that the distress . . . suffered was the kind of unbearable mental anguish that rose to the level of severe emotional distress."[31] Here, both

---

and revival of judgment, threatening immediate foreclosure was not extreme or outrageous conduct); see also Wilson v. Am. Gen. Fin. Inc., 807 F. Supp. 2d 291, 303 (W.D. Pa. 2011) (defendants' untrue statements that plaintiff's accounts were past due as a result of untimely or delinquent payments, standing alone, are not sufficiently shocking or outrageous); Clay v. Option One Mortg. Corp., No. 07-1327, 2007 WL 2728972, at *5 (E.D. Pa. Sept. 18, 2007) (dismissing claim for emotional distress based on defendants' false listing of plaintiff as mortgagor in an advertisement for a sheriff's sale).

[28] Fulton v. United States, 198 F. App'x 210, 215 (3d. Cir. 2006) (citing Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004)).

[29] Reedy, 615 F.3d at 231 (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (quotation marks omitted); Allstate Prop. & Cas. Ins. Co. v. Vargas, No. 06-3368, 2006 U.S. Dist. LEXIS 95608, at *14 (E.D. Pa. Dec. 28, 2006) ("'[E]xtreme mental anguish, outrage, severe anxiety . . . painful embarrassment among her friends' do not constitute physical illnesses but rather are mental and psychic injuries for which Pennsylvania law offers no redress in the context of an intentional infliction of emotional distress claim."); Reeves, 866 A.2d at 1122-23 ("a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct" (citing Fewell v. Besner, 664 A.2d 577, 582 (Pa. Super. Ct. 1995))). But see McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 702-703 (E.D. Pa. 2002) (holding that physical harm includes ongoing mental and emotional harm, and sustaining an intentional infliction of emotional distress claim where a plaintiff alleged only "serious emotional harm, psychological distress and damage" (citations and quotation marks omitted)).

[30] Mastromatteo v. Simock, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (quoting Kazatsky, 527 A.2d at 993). To survive summary judgment, competent medical evidence of both severity and causation is required. Kazatsky, 527 A.2d at 995.

[31] Kist v. Fatula, No. 06-0067, 2007 WL 2404721, at *22 (W.D. Pa. Aug. 17, 2007).

Plaintiffs assert simply that they suffered "severe emotional distress."  This conclusory allegation is insufficient to state a claim.  Similarly, Plaintiffs' allegations that they suffered "extreme stress, anxiety and mental anguish," "embarrassment," "loss of sleep, [and loss of] appetite" are inadequate to support an inference that the emotional distress was severe, or beyond the ordinary.[32]

While Charles Messer suffered an undoubtedly serious physical injury allegedly induced by emotional distress, Plaintiffs have failed to plead the requisite causal link between First Financial's actions and Mr. Messer's brain bleed, which occurred more than two months after the repossession of Mrs. Messer's car.  Plaintiffs have not alleged that any of First Financial's actions were intentionally directed at Charles Messer, who was neither a party to any loan agreement with First Financial nor the owner of the car.  Rather, Plaintiffs explain that Mr. Messer's injury was the result of anxiety caused primarily by the malicious gossip of his parishioners and the investigation into his management of church funds.  Plaintiffs contend that the gossip and investigation were instigated by the presence of a new car in the church parking lot, which Plaintiffs themselves leased to replace the repossessed Toyota Prius.  As alleged, First Financial's actions are insufficiently proximate to Mr. Messer's injuries to establish the requisite

---

[32] See Schuster v. Twp. of N. Sewickley, No. 12-0333, 2012 WL 2116574, at *5 (W.D. Pa. June 11, 2012) ("Plaintiffs' Amended Complaint merely asserts conclusory statements that Plaintiffs suffered 'sever [sic] emotional and psychological distress, humiliation, shame, embarrassment, and inconvenience.' . . . [N]either Plaintiffs' conclusory statements regarding severe emotional distress, nor Plaintiffs' allegations of humiliation, embarrassment, or inconvenience, are sufficient to demonstrate that the severity goes beyond that which any reasonable man could be expected to endure." (alterations in original, citation omitted)).  But see Lane v. Cole, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000) ("Severe emotional distress includes 'fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea.'  Such emotional distress must also be accompanied by some physical manifestation.  Plaintiffs' allegations that they continue to suffer 'fear, anxiety, stress, anger, headaches, nightmares, humiliation, embarrassment, emotional distress [and] mental anguish' are sufficient to raise an inference of severe emotional distress." (citations omitted)).

elements of intent and causation.[33]

### C. Loss of Consortium

Plaintiff Diane Messer has brought a loss of consortium claim based on the injuries suffered by her husband, Charles Messer. Under Pennsylvania law, a loss of consortium claim is necessarily derivative of a claim by the injured spouse; accordingly, it is "always dependent upon the injured spouse's right to recover."[34] Here, the injured spouse, Charles Messer, brings only a claim for intentional infliction of emotional distress. Because the Court has held that First Financial's conduct was not outrageous enough to support that emotional distress claim, and that Plaintiffs cannot plead the elements of intent and causation as to Mr. Messer's injury, Diane Messer's loss of consortium claim must also fail.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss Plaintiffs' claims for Intentional Infliction of Emotional Distress (Count IV) and Loss of Consortium (Count V) and deny the Motion to Dismiss in all other respects.

An appropriate Order follows.

---

[33] See generally Brown v. Phila. Coll. of Osteopathic Med., 760 A.2d 863, 868-69 (Pa. Super. Ct. 2000) (discussing causation in the context of a claim for negligent infliction of emotional distress).

[34] Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001) (quoting Scattaregia v. Shin Shen Wu, 495 A.2d 552, 554 (Pa. Super. Ct. 1985)) (quotation marks omitted).